21-30-cv
*Ferguson Enterprises, Inc. v. American Home Assurance Co.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of June, two thousand twenty-two.

Present:

> DENNIS JACOBS,
> WILLIAM J. NARDINI,
> BETH ROBINSON,
> *Circuit Judges*.

_____

FIRST STATE INSURANCE COMPANY, NEW ENGLAND REINSURANCE CORPORATION,

> *Plaintiffs*,

> v.                                                                          21-30-cv

COLUMBIA CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; CENTURY INDEMNITY COMPANY, formerly known as CCI Insurance Company, formerly known as Insurance Company of North America; DOE INSURERS 1-10,

> *Defendants*,

FERGUSON ENTERPRISES, INC.,

> *Defendant-Appellant*,

> v.

1

AMERICAN HOME ASSURANCE COMPANY;
FIREMAN'S FUND INSURANCE COMPANY;
OAKWOOD INSURANCE COMPANY, as
successor by merger to Central National Insurance
Company of Omaha, but only as to policies issued
by Cravens, Dargan & Company, Pacific Coast, and
its subsidiaries; SWISS REINSURANCE
AMERICA CORPORATION, as administrator for
21st Century Premier Insurance Company, as
successor in interest to Forum Insurance Company,

*Defendants-Appellees.*[*]

| | |
|---|---|
| For Defendant-Appellant Ferguson Enterprises, Inc.: | JEFFREY L. SCHULMAN, Pasich LLP, New York, NY. |
| For Defendant-Appellee American Home Assurance Company: | KEVIN J. O'CONNOR (Michael S. Batson, *on the brief*), Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA. |
| For Defendant-Appellee Fireman's Fund Insurance Company: | MICHAEL A. KOTULA (Cheryl F. Korman, Lawrence A. Levy, *on the brief*), Rivkin Radler LLP, Uniondale, NY (Louis B. Blumenfeld, Cooney, Scully, and Dowling, Hartford, CT, *on the brief*). |
| For Defendant-Appellee Oakwood Insurance Company: | BRIAN G. FOX, Cohn Baughman & Serlin, Mt. Laurel, NJ (Laura Pascale Zaino, Halloran & Sage LLP, Hartford, CT, *on the brief*). |
| For Defendant-Appellee Swiss Reinsurance America Corporation: | ARTHUR J. MCCOLGAN, Walker Wilcox Matousek LLP, Chicago, IL. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART AND REMANDED**.

Defendant-Appellant Ferguson Enterprises, Inc. ("Ferguson") appeals from an order entered by the district court on December 9, 2020, dismissing the case and rendering final multiple orders adjudicating motions for partial summary judgment in favor of Defendants-Appellees American Home Assurance Company ("American Home"), Fireman's Fund Insurance Company

[*] We direct the Clerk of Court to amend the caption as set forth above.

("Fireman's Fund"), Oakwood Insurance Company ("Oakwood") (formerly known as Central National Insurance Company ("Central National")), and Swiss Reinsurance America Corporation ("Swiss Re") (together, the "Insurers").

This case concerns an action seeking a declaration of various insurers' rights and obligations in connection with underlying asbestos litigation. The insurers all issued liability policies to Familian Corporation, Ferguson's predecessor-in-interest. Before us are Ferguson's challenges to three determinations made by the district court on summary judgment: (1) under the plain language of the policies, no "stub policy period"—i.e., a policy period lasting less than a year—provides an additional aggregate limit of liability; (2) the prior insurance and non-cumulation of liability provisions in the Central National policies unambiguously limits the potential liability under the policies across multiple policy periods; and (3) the Fireman's Fund policy does not "drop down" to provide coverage in place of Comstock Insurance Company ("Comstock"), an underlying insurer, upon its insolvency. We assume the parties' familiarity with the record.

We review *de novo* a district court's grant of summary judgment, *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021), and its interpretation of an insurance agreement, *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012). Under California law,[1] "[w]ords in an insurance policy are to be interpreted as a layperson would interpret them, in their ordinary and popular sense." *Deere & Co. v. Allstate Ins. Co.*, 32 Cal. App. 5th 499, 513 (2019) (cleaned up). "If particular policy language is ambiguous"—that is, if "it is capable of two or more constructions, both of which are reasonable"—the ambiguity "is to be resolved by interpreting the ambiguous provisions in accordance with the insured's objectively reasonable expectations." *Id.* (cleaned up).

First, Ferguson argues that under California law, absent affirmative evidence that the parties intend otherwise, when a policy is in effect for a fraction of a year and the insured pays a prorated premium for that portion of the year, the insured is entitled to the full aggregate annual limit. No California appellate court has categorically held as much, but we agree with Ferguson that, with respect to the three policies before us, the full aggregate limits apply to the stub policy periods.

The American Home policy was issued with a policy period of March 5, 1974, to March 5, 1977. Item 3 of the American Home policy provides a limit of liability of "$10,000,000 in the aggregate of each annual period in accordance with Insuring Agreement III"—which states that American Home's total limit of liability "shall not exceed the [$10 million] during each annual period commencing with the effective or anniversary date of this policy." App'x at 284, 302. By endorsement, and "[i]n consideration of an additional premium," the expiration date of the American Home policy was "amended to read as follows: March 15, 1977." *Id.* at 301. Under the endorsement, "[a]ll other terms and conditions remain[ed] the same." *Id.* The American Home policy is ambiguous as to whether the ten-day stub policy carries with it a full aggregate limit. "All other terms and conditions remain[ing] the same" could mean that the endorsement

---

[1] The parties do not dispute that California law applies here, and we agree.

simply extended the preceding annual period while including all claims within the "stub" period under the aggregate limit applicable to the preceding year, *or* that a full aggregate limit attaches each new year that commences on the anniversary date of the policy. We resolve the ambiguity under the latter interpretation—in accordance with Ferguson's (the insured's) objectively reasonable expectations—and accordingly conclude that the American Home policy has four annual aggregate limits of $10 million each.

The Central National umbrella and excess policies were each issued with policy periods of March 5, 1979, to March 5, 1980 (together, the "Central National policies"). The Central National policies provide $5 million "in the aggregate for each annual period during the currency of this policy." Sealed App'x at 777, 797. The Central National umbrella policy defines "each annual period" as "each consecutive period of one year commencing from the effective date of this policy." *Id.* at 778. By endorsement, and in exchange for payment of an additional premium, the Central National policies were "amended to read as follows: expiration – April 1, 1980"; "[a]ll other terms and conditions remain[ed] unchanged." *Id.* at 789, 800. Like the American Home policy, the Central National policies are ambiguous as to how the amended expiration date impacts, if at all, the number of aggregate limits because the endorsements could reasonably be interpreted to extend the pre-endorsement aggregate limit into the stub period, or to apply a distinct annual aggregate limit to the stub policy periods. We therefore resolve the ambiguity in accordance with Ferguson's objectively reasonable expectations—the Central National policies each have two annual aggregate limits of $5 million.

The Swiss Re policy period extends from December 18, 1984, to April 1, 1986, and provides that "[t]here is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company . . . on account of all occurrences during each policy year shall not exceed the aggregate amount stated in Item 6(B) of the declarations": $5 million. App'x at 126, 128. The Swiss Re policy does not define the term "policy year," and it can be reasonably interpreted two ways, making it ambiguous. Either (1) a "policy year" must be no less than a full 365 days, meaning that the Swiss Re Policy has only one policy year of 15.5 months and accordingly, one aggregate limit, or (2) a new "policy year" starts each year on the anniversary of the policy's effective date, regardless of whether that year is truncated, meaning that the Swiss Re policy has two policy years, one starting on December 18, 1984, and the second starting on December 18, 1985, and accordingly has two aggregate limits of $5 million each. In accordance with Ferguson's objectively reasonable expectations, we interpret the Swiss Re policy under the latter interpretation.

Second, Ferguson argues that the district court erred in granting Central National's motion for summary judgment with respect to the non-cumulation provision in its umbrella and excess policies that were issued with policy periods of April 1, 1980, to April 1, 1981 (together, the "1980 umbrella and excess policies"). Below, Central National moved for summary judgment "declaring that its Prior Insurance And Non-Cumulation of Liability provision reduces the aggregate limits of the later set of Central National policies." Dkt No. 317-7 at 1 (internal quotation marks omitted). The district court, however, did not issue any such declaration. *See* 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."). Rather, it granted Central National's

4

motion for summary judgment "on the prior insurance and non-cumulation of liability provisions" and concluded that the Central National policy language "clearly and unambiguously limit[ed] the potential liability under both the umbrella or the excess policies and this per-occurrence limit applie[d] across policy periods," thereby making "[a]ny potential reduction . . . depend[ent] on the limits reached in previous policies." Sp. App'x at 84 (cleaned up).

It is unclear what exactly the district court declared as a matter of law—whether it meant (1) simply to rule generally that the non-cumulation provisions could be enforced as anti-stacking provisions such that the aggregate limit of the 1980–1981 Central National policies should be reduced by losses for underlying asbestos-related personal injury claims that are also covered and paid for under the earlier 1979–1980 policies, or (2) whether it concluded that in this case the non-cumulation provisions have actually been triggered such that the aggregate limits under the 1980 umbrella and excess policies have, in fact, been reduced. We see no facts in the summary judgment record to support the latter conclusion, as the record is devoid of evidence that Central National covered losses under other policies that were also covered under the 1980 umbrella and excess policies. The district court's decision also left unaddressed critical questions about how the non-cumulation provisions function—particularly with respect to the meaning of "loss" as used in the non-cumulation provisions, whether "loss" in the non-cumulation provisions is tied to "occurrence," and whether this case involves multiple "losses" for purposes of the non-cumulation clauses. For these reasons, we vacate the district court's grant of summary judgment in favor of Central National and remand to the district court for further proceedings.

Lastly, we disagree with Ferguson that the Fireman's Fund policy must "drop down" to provide coverage in place of Comstock. In general, under California law "an excess insurance policy provides coverage that begins only after a predetermined amount of primary coverage is exhausted." *Span, Inc. v. Assoc. Int'l Ins. Co.*, 227 Cal. App. 3d 463, 474 (1991) (cleaned up). In *Span*, the California Court of Appeal concluded that the excess insurance policy unambiguously contemplated exhaustion of the underlying insurance policy only by *payment*, not upon the insolvency of the primary insurer. *Id.* at 468; *see id.* at 476 ("In the event of reduction or exhaustion of the aggregate limits of liability applicable to the underlying insurance . . . *by reason of losses paid thereunder*, this policy shall . . . in the event of reduction pay the excess of the reduced underlying limit . . . [and] in the event of exhaustion continue in force as underlying insurance."). The Fireman's Fund policy closely tracks the language of the excess policy at issue in *Span*—namely, that "in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses *paid thereunder* on account of occurrences during this policy period," the Fireman's Fund policy shall "apply as excess of the reduced limit of liability thereunder." App'x at 768. While Ferguson relies on the Liberalization Clause in the Fireman's Fund policy, that clause concerns only the scope of coverage. We therefore agree with the district court's declaration that the Fireman's Fund policy does not "drop down" upon Comstock's insolvency.

Accordingly, we **AFFIRM** the judgment of the district court granting partial summary judgment in favor of the Fireman's Fund on the issue of whether its policy "drops down" upon Comstock's insolvency, we **REVERSE** the judgment of the district court granting partial summary judgment in favor of American Home, Central National, and Swiss Re and denying partial

5

summary judgment against Ferguson on the issue of the policies' aggregate limits, and we **VACATE** the judgment of the district court granting partial summary judgment in favor of Central National on the proper construction of the non-cumulation provisions and **REMAND** to the district court for further proceedings on that claim. **AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART AND REMANDED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6